IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RHONSHAWN JACKSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT BRITTON | : | NO. 08-4203 |

## MEMORANDUM

LOWELL A. REED, JR., Sr. J.                                        April 6, 2010

Presently before this court is a pro se petition for writ of habeas corpus (Doc. No.
1) filed pursuant to 28 U.S.C. § 2254 by Rhonshawn Jackson, ("Jackson"), the response
thereto (Doc. No. 8), and Jackson's replies (Doc. Nos. 18 and 20).  Jackson, who is
currently incarcerated in the State Correctional Institution at Houtzdale, Pennsylvania,
challenges his incarceration for first degree murder, violations of the Uniform Firearms
Act, and possession of an instrument of crime.  For the reasons that follow, the petition
will be denied.

## FACTS AND PROCEDURAL HISTORY:

On May 17, 2000, Robert Isaacs and Arnold Savage were drinking together at the
Whisper's Inn bar.  (N.T. 9/26/01, 51-53).  Jackson was also at the bar that evening.
(N.T. 9/26/01, 51-53).  Commonwealth witness Angela Geiger testified at trial that
sometime between 10:00 p.m. and 11:00 p.m., she observed Mr. Isaacs and Jackson
engage in a heated argument in the back of the bar.  (N.T. 9/28/01, 9).  At approximately
11:00 p.m., Jeffrey Ellison offered to give Mr. Isaacs and Mr. Savage a ride home.  (N.T.
10/2/01, 26).  After the three men exited the bar, Mr. Ellison told Mr. Isaacs and Mr.

Savage that he would be right back and then walked up the street. (N.T. 10/2/01, 27-28). Jackson had left the bar earlier. (N.T. 9/26/01, 56-57). Upon returning to the bar area, Mr. Ellison testified that he saw Jackson pointing a gun at Mr. Isaacs. (N.T. 10/2/01, 29). Mr. Ellison immediately yelled at Jackson to put the gun down, but after Mr. Isaacs grabbed for the weapon, Jackson took a step back, shot Mr. Isaacs from a few feet away, and then fled the scene. (N.T. 9/28/01, 10-15; 10/2/01, 29-31). Mr. Isaacs was pronounced dead at 11:37 p.m. (N.T. 10/2/01, 9-10).

Wade Briscoe testified at Jackson's trial. He stated that while he and Jackson were in prison together, Jackson admitted that he had robbed a pizza store and then later the same day, also killed Mr. Isaacs. (N.T. 9/28/01, 146-150). Jackson disclosed to Mr. Briscoe that he had asked Mr. Isaacs to come outside with him after the two men had an altercation in the bar, and that he shot Mr. Isaacs in the chest outside the bar. (N.T. 9/28/01, 151, 157-159).

After a jury trial before the Honorable Jane Cutler Greenspan, Court of Common Pleas of Philadelphia County, Jackson was convicted of first degree murder, violations of the Uniform Firearms Act, and possession of an instrument of crime. On November 29, 2001, Jackson was sentenced to life imprisonment for first degree murder as well as consecutive terms of 3 to 7 years of imprisonment for violations of the Uniform Firearms Act and 1 to 5 years of imprisonment for possession of an instrument of crime.

Jackson filed a direct appeal asserting the following claims:

> 1) the evidence was insufficient to sustain his conviction for first degree murder;
>
> 2) the verdict was against the weight of the evidence;
>
> 3) the trial court erred in permitting evidence that Jackson had robbed a pizza store earlier on the same day as the murder; and
>
> 4) ineffective assistance of counsel for failing to present the testimony of Gregory Young, who allegedly would have testified that there was no confrontation between Jackson and the victim on the night of the murder.

On May 5, 2003, the Pennsylvania Superior Court affirmed the judgment of sentence. Commonwealth v. Jackson, 829 A.2d 359 (Pa. Super. 2003); No. 62 EDA 2002 (Pa. Super. May 5, 2003) (unpublished memorandum), attached as Ex. "A" to Respondents' Answer to the Petition for a Writ of Habeas Corpus (Doc. No. 8; hereinafter "Answer"). The Pennsylvania Supreme Court denied Jackson's petition for allowance of appeal on November 14, 2003. Commonwealth v. Jackson, 837 A.2d 1178 (Pa. 2003).

On June 17, 2004, Jackson filed a pro se petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. § 9541, et seq. Counsel was appointed and subsequently filed an amended petition. The PCRA court dismissed Jackson's petition without a hearing on March 9, 2006.

On appeal to the Pennsylvania Superior Court, Jackson argued that trial counsel was ineffective for failing to request a jury charge on both voluntary and involuntary manslaughter and for failing to request a jury charge regarding witness bias. On September 17, 2007, the Superior Court affirmed the denial of Jackson's PCRA petition.

Commonwealth v. Jackson, 938 A.2d 1115 (Pa. Super. 2007); No. 710 EDA 2006 (Pa. Super. Sept. 17, 2007) (unpublished memorandum), attached as Ex. "B" to Respondents' Answer. Jackson filed a petition for allowance of appeal in the Pennsylvania Supreme Court which was denied on May 29, 2008. Commonwealth v. Jackson, 952 A.2d 675 (Pa. 2008).

On August 12, 2008,[1] Jackson filed this petition for a federal writ of habeas corpus presenting the following issues:

1) the trial court erred in failing to properly instruct the jury as to voluntary and involuntary manslaughter;

2) trial counsel was ineffective for failing to request a jury charge for voluntary and involuntary manslaughter;

3) the trial court erred in failing to charge the jury as to witness bias; and

4) trial counsel was ineffective for failing to request a jury charge regarding witness bias.

See Form for Use in Application for Habeas Corpus Under 28 U.S.C. § 2254 (Doc. No. 1; hereinafter "Petition"). Respondents have filed an answer asserting that Jackson is not entitled to federal habeas relief because his claims are unexhausted, procedurally defaulted and/or meritless. See Answer (Doc. No. 8). Jackson has filed a reply thereto. See Petitioner's Reply to Response for Writ of Habeas Corpus (Doc. No. 18; hereinafter

---

[1]Generally, a pro se petitioner's habeas petition is deemed filed at the moment he delivers it to prison authorities for mailing to the district court. Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)). Jackson signed his habeas petition on August 12, 2008; therefore, I will assume that he presented his petition to prison authorities on that date.

"Reply") and Petitioner's Amended Reply to Response for Writ of Habeas Corpus (Doc. No. 20; hereinafter "Amended Reply").[2]

**DISCUSSION**:

1.      **Standard of Review**

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts v. Vaughn, 228

---

[2]To the extent that Jackson attempts to present a new habeas claim in his reply, that is, a claim that the trial court erred in permitting testimony that Jackson had robbed a pizza store earlier on the same day as the murder, I note that such a claim would be time-barred. See 28 U.S.C. § 2244(d)(1); Reply at 1-12; Amended Reply at 21-22. The Third Circuit has held that in a habeas proceeding, a party may not allege any new claim by amendment after the expiration of the statute of limitations. See United States v. Thomas, 221 F.3d 430, 435-36 (3d Cir. 2000). In the instant case, the federal statute of limitations expired on January 26, 2009. See 28 U.S.C. § 2244(d)(2); see also Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000). Jackson did not amend his habeas petition to assert any new claims before that time and did not submit his reply until April 16, 2009. Because any attempt to assert new claims in Jackson's reply is precluded by the federal statute of limitations, and Jackson fails to provide any grounds for equitable tolling thereof, see Lawrence v. Florida, 549 U.S. 327, 336 (2007), I conclude that Jackson's claim of trial court error for allowing evidence of the aforementioned robbery must be dismissed as time-barred.

5

F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S. 362 (2000). In Williams, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." 529 U.S. at 412-413 (quoted in Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000)). The Court in Williams further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411).

## Claims 1 and 3: Trial Court Error

In his first and third claims, Jackson contends that the trial court erred in failing to

provide jury instructions on voluntary and involuntary manslaughter as well as witness

bias.  A federal court, absent unusual circumstances, should not entertain a petition for

writ of habeas corpus unless the petitioner has first satisfied the exhaustion requirement

of 28 U.S.C. § 2254.  "The exhaustion doctrine is designed to give the state courts a full

and fair opportunity to resolve federal constitutional claims before those claims are

presented to the federal courts."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see

also Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953

F.2d 853, 856 (3d Cir. 1992)).  A petitioner typically exhausts his federal claims by fairly

presenting each claim at each stage of the state's established review process.  Villot v.

Varner, 373 F.3d 327, 337 (3d Cir. 2004).  The habeas corpus petitioner has the burden of

proving exhaustion of all available state remedies.  Lambert v. Blackwell, 134 F.3d 506,

513 (3d Cir. 1997) (citing 28 U.S.C.A. § 2254).

Jackson's claims of trial court error were not presented to the state courts and as a

result, are unexhausted.[3]  See Post Conviction Petition with Consolidated Memorandum

---

[3]In his counseled collateral appeal, Jackson did not present these claims as issues of trial
court error, instead arguing only that trial counsel was ineffective for failing to request the
specified jury charges.  As a result, Jackson's claims of trial court error are unexhausted.  See
Evans v. Court of Common Pleas, Del. Co., Pa., 959 F.2d 1227, 1231 (3d Cir. 1992) ("the same
method of legal analysis must be available to the state court as will be employed by the federal
court").  To the extent that Jackson would argue that the instant claims of trial court error were
presented in his original pro se PCRA petition, I note that under state law, a petitioner's pro se
PCRA petition is not supplemented by, but rather is replaced by a counseled and amended PCRA
petition.  See Commonwealth v. Pursell, 724 A.2d 293, 301-02 (Pa. 1999) (post-conviction court
not required to struggle through pro se pleadings where petitioner represented); Commonwealth
v. Ellis, 626 A.2d 1137, 1139, 1141 (Pa. 1993) (no right to hybrid representation either at trial or
on appeal, and appellate courts not required to consider pro se filings or briefs where defendant

of Law (Sept. 26, 2005) (counseled amended PCRA petition). I will, however, excuse

exhaustion pursuant to 28 U.S.C. § 2254(b)(1), because a return to state court would be

futile due to "an absence of available State corrective process." Lines, 208 F.3d at 162.

The only way in which Jackson could present these claims in the state court at this time is

by filing a second PCRA petition. See Szuchon v. Lehman, 273 F.3d 299, 324 n.14 (3d

Cir. 2001). However, any such petition would be time-barred by the PCRA's statute of

limitations.[4]

Although exhaustion is excused, Jackson is considered to have procedurally

defaulted his claims because state procedural rules bar him from seeking further relief in

state courts. Keller v. Larkins, 251 F.3d 408, 415 (3d Cir. 2001). The principal exception

to this general rule precluding federal review of habeas claims that have been

procedurally defaulted is for petitioners who can show "cause and prejudice" for the

procedural default or that a "miscarriage of justice" will occur absent review. Hubbard v.

Pinchak, 378 F.3d 333, 338 (3d Cir. 2004); Cristin v. Brennan, 281 F.3d 404, 414 (3d Cir.

---

represented). Consequently, any claims presented in Jackson's pro se PCRA petition, but
abandoned in his counseled, amended PCRA petition were not properly presented to the state
courts.

[4]Pursuant to the amended PCRA, effective January 16, 1996, collateral actions must be
filed within one (1) year of the date the conviction at issue becomes final. 42 Pa. Cons. Stat.
Ann. § 9545(b)(1); see also, e.g., Lines, 208 F.3d at 164 n.17 (noting that the Pennsylvania
Supreme Court has held that the time restrictions for seeking relief under the PCRA are
jurisdictional) (citing Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999)). For purposes of the
PCRA, a judgment becomes final at the conclusion of direct review, including discretionary
review in the Supreme Court of Pennsylvania and the Supreme Court of the United States, or at
the expiration of time for seeking the review. 42 Pa. Cons. Stat. Ann. § 9545(b)(3). Jackson's
conviction became final in 2004.

2002).  The Supreme Court has delineated what constitutes "cause" for the procedural default: the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Werts, 228 F.3d at 192-193 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Id. at 193 (citing Carrier, 477 U.S. at 494).  This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial.  Id.

In the alternative, if the petitioner fails to demonstrate cause and prejudice for the default, the federal court may also consider a defaulted claim if the petitioner can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 748.  In order to satisfy the fundamental miscarriage of justice exception, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327 (1995) (citing Carrier, 477 U.S. at 496); see Glass v. Vaughn, 65 F.3d 13, 16-17 (3d Cir. 1995), cert. denied, 516 U.S. 1151 (1996) (assuming that the Schlup miscarriage of justice/actual innocence standard applied to noncapital petitioner arguing eligibility for lesser degree of guilt).  To satisfy the "actual innocence" standard, a petitioner must show that, in light of new evidence, it is more

likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  <u>Schlup</u>, 513 U.S. at 327; <u>see also</u> <u>Glass</u>, 65 F.3d at 16.

Jackson has not even attempted to provide this court with an explanation for his failure to properly present these claims to the state courts.[5]  As a result, he has not shown cause to excuse his procedural default.[6]  <u>Carrier</u>, 477 U.S. at 488.  Moreover, because Jackson makes no colorable showing of innocence, he has failed to demonstrate that a miscarriage of justice will result if his claims are not reviewed.  <u>Coleman</u>, 501 U.S. at 748; <u>Schlup</u>, 513 U.S. at 327 (citing <u>Carrier</u>, 477 U.S. at 496); <u>see</u> <u>Glass</u>, 65 F.3d at 16-17.  Consequently, federal review of these claims is foreclosed.

**Claims 2 and 4: Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are governed by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In <u>Strickland</u>, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

---

[5]To the extent that Jackson would argue that his default is due to counsel's failure to properly present these claims on collateral appeal, such a claim must fail.  The Supreme Court has determined that any attorney error that has led to the default of a petitioner's claims in a collateral or discretionary proceeding in state court cannot constitute cause to excuse his default in a federal habeas petition.  <u>See</u> <u>Coleman</u>, 501 U.S. at 757; <u>see also</u> <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 558 (1987) (Constitution does not dictate standard for attorney effectiveness in post-conviction collateral attack).

[6]Because no cause has been demonstrated, the court need not address the prejudice requirement.  <u>Engle v. Isaac</u>, 456 U.S. 107, 134 n.43 (1982) (because petitioner lacked cause for default, the court need not consider whether he also suffered actual prejudice).

> First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made errors
> so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

Id. at 687.

Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Id.

"It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  Williams, 529 U.S. at 391.  Thus, Jackson is entitled to relief if the Pennsylvania courts' decision rejecting his claims of ineffective assistance of counsel was either "contrary to,

or involved an unreasonable application of," that established law.  Id.

## A.    Failure to Request a Manslaughter Charge

In his second claim, Jackson first argues that trial counsel was ineffective for

failing to request a manslaughter charge.  As an initial matter, I note that trial counsel did

request a general manslaughter charge.[7]  (N.T. 10/2/01, 116-120).  The trial court

rejected counsel's request and failed to issue any type of manslaughter instruction.  (N.T.

10/2/01, 120).  Because counsel was not specific as to which manslaughter charge he was

seeking, the state court reviewed the claim as one of ineffective assistance of counsel for

_____

[7]Specifically, counsel argued that a manslaughter charge was appropriate because trial testimony supported the theory that the gun had fired accidentally when the victim pushed Jackson. The following exchange took place during the jury charge conference:

| [DEFENSE COUNSEL]: | Does the Court see evidence to amend the charges, based upon the evidence at trial, to include Manslaughter, based on the last testimony? |
| | Is there enough evidence – I am asking the Court for Manslaughter, if the Court feels that there is enough evidence, and I will review that -- |
| THE COURT: | I don't see any evidence of Manslaughter whatsoever in this case. |
| [DEFENSE COUNSEL]: | If they believed some of what Jeffrey Ellison said, he is grabbing this gun, and he moves the gun, and he pushes the gun.  Somehow he moves it in some fashion. |
| | * * * * * * * * * |
| THE COURT: | There is no indication from any source that the gun was being touched at the time that it went off, and given that, I have to say that there is no evidence of Manslaughter. |

(10/2/01, 116-117, 120).

failure to request both voluntary and involuntary manslaughter instructions.

Voluntary manslaughter is "the intentional killing of another, done without malice aforethought but in the sudden heat of passion caused by adequate legal provocation, before sufficient time has elapsed 'for the blood to cool' and reason to reassume control of the actor's conduct." Commonwealth v. Long, 333 A.2d 865, 867 (Pa. 1975) (citation omitted); see also 18 Pa.C.S. § 2503.[8]  In presenting the claim to the state courts that trial counsel had been ineffective for failing to request a voluntary manslaughter instruction, Jackson argued that he and the victim had been involved in a heated argument while inside the Whisper's Inn Bar which caused both men to exit the bar. See Petitioner's "Post Conviction Petition with Consolidated Memorandum of Law," at 13 (Sept. 26, 2005).  Jackson contends that they were still "in the throes of heated passion" when they left the bar and that there was no "time to cool" before the shooting occurred. Id. at 13-14.  In support thereof, Jackson points to the fact that the men were in close proximity to each other when the gun was fired as well as the fact that the gun was not fired until the victim pushed Jackson's arm away. Id.

_____

[8]Under Pennsylvania law, voluntary manslaughter is defined, in relevant part, as follows:
**(a) General rule.** – A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
  (1) the individual killed; or
  (2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.
18 Pa. Cons. Stat. Ann. § 2503(a).

In denying the claim that counsel was ineffective for failing to request a voluntary manslaughter or "heat of passion" instruction, the state court concluded:

> The record supports the PCRA court's finding that there was no evidence to support a "heat of passion" manslaughter instruction. Neither the Commonwealth nor the defense offered any evidence to show that [Jackson] shot the victim while acting under a sudden or intense provocation by the victim. In fact, defense counsel emphasized in closing argument that the video tape of the bar moments before the shooting revealed that [Jackson] and the victim were not arguing or fighting. N.T., 10/2/01, at 130, 135. Defense trial counsel emphasized this evidence to support [Jackson's] defense that he had no motive to shoot the victim. Since a voluntary manslaughter charge was not supported by the evidence presented at trial, [Jackson] has failed to demonstrate that trial counsel was ineffective for failing to request a voluntary manslaughter charge.

Commonwealth v. Jackson, No. 710 EDA 2006, at 7 (Pa. Super. Sept. 17, 2007) (unpublished memorandum), attached as Ex. "B" to Respondents' Answer.

I conclude that the state courts' determination of this issue was reasonable and not contrary to established law. The Pennsylvania Supreme Court has held that "a trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict." Commonwealth v. Browdie, 671 A.2d 668, 674 (Pa. 1996). Indeed, the Pennsylvania courts have stated that instructions regarding matters which are not before the court or which are not supported by the evidence serve no purpose other than to confuse the jury. Commonwealth v. Carter, 466 A.2d 1328, 1332 (1983). In the instant case, trial counsel did not present evidence which would reasonably lead the jury to conclude that petitioner had shot the

victim in the "heat of passion" or while harboring an "unreasonable belief." On the contrary, defense strategy at trial specifically focused upon petitioner's innocence and lack of motive. (N.T. 10/2/01, 126, 130). Because the trial evidence did not reasonably support a voluntary manslaughter verdict, I conclude that the state courts' conclusion that trial counsel was not ineffective for failing to request such an instruction is not contrary to United States precedent, nor an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Thus, habeas relief is not appropriate for this aspect of Jackson's claim.

Jackson also claims that counsel was ineffective for failing to request an involuntary manslaughter charge. The elements of involuntary manslaughter as defined by 18 Pa. Con. Stat. Ann. § 2504(a) include causing the death of another "as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner." In support of his claim that counsel should have requested an involuntary manslaughter charge, Jackson argued in state court that based on the testimony at trial, it would have been reasonable for the jury to infer that the gun went off accidentally during the dispute outside the bar when the victim pushed Jackson's arm. Commonwealth v. Jackson, No. 710 EDA 2006, at 7 (Pa. Super. Sept. 17, 2007) (unpublished memorandum), attached as Ex. "B" to Respondents' Answer. In rejecting this claim, the state court pointed out that this is argument was identical to the argument which defense counsel presented to the trial court in requesting

a general "manslaughter" charge.[9]  Id. at 8.  As such, the state court concluded that "trial

counsel cannot be deemed ineffective for failing to request an involuntary manslaughter

charge because it appears that counsel did in fact ask for this instruction."  Id.  The court

also determined that no evidence had been presented at trial which would have supported

the conclusion that Jackson shot the victim while acting in a reckless or negligent manner.

Id.  As such, the court concluded that, even if trial counsel had not requested the

instruction, Jackson's claim of ineffective assistance would have failed.  Id.

I conclude that the Superior Court's adjudication of Jackson's claim did not result

in a decision that was contrary to, or an unreasonable application of, Strickland.  As the

state court pointed out, trial counsel did request an instruction based on the theory that the

gun was fired under accidental circumstances.  The trial court rejected that request.

Because trial counsel did request the disputed charge, he cannot be deemed ineffective for

failing to do so.  Even assuming, however, that counsel had not requested the charge, this

claim would fail since the trial evidence did not reasonably support a verdict for

involuntary manslaughter, nor was it made an issue in the case.  See Commonwealth v.

White, 415 A.2d 399, 402 (Pa. 1980) (requested instructions on the offense of involuntary

manslaughter should be given in those homicide prosecutions where the offense has been

made an issue in the case and the trial evidence reasonably would support such a verdict).

At trial, the evidence presented indicated that Jackson deliberately pointed the gun at Mr.

---

[9]See footnote 7, supra.

Isaacs and then shot him. (N.T. 9/28/01, 13-14; 10/2/01, 29-31). There was no evidence to support the proposition that he acted in a reckless or grossly negligent manner. As such, Jackson has failed to establish that he has suffered any prejudice through trial counsel's alleged deficient performance and fails to meet his burden to show that, but for counsel's error, the outcome would have been different. Strickland, 466 U.S. at 694. Under the circumstances, Petitioner is not entitled to the habeas relief that he has requested and this claim must be denied.

### B. Failure to Request a Bias Charge

In his fourth claim, Jackson contends that trial counsel was ineffective for failing to request a jury instruction regarding the potential bias of Commonwealth witness Angela Geiger, who had an open misdemeanor charge pending against her at the time she testified.

In denying this claim, the state court determined that Jackson had failed to establish that he was prejudiced by counsel's action. In support thereof, the court reasoned:

> Here, the jury was made aware of Angela Geiger's criminal record and potential motive for testifying in favor of the prosecution in this case. The record reflects that defense counsel attacked Geiger's credibility during his closing argument. Defense counsel emphasized that Geiger was a prostitute and a drug addict at the time of the killing, and that she had an open bench warrant against her that influenced her trial testimony. See N.T., 10/2/01, at 126-136. Therefore, [Jackson's] trial counsel took full advantage of his opportunity to raise a doubt in the mind of the jury as to whether Angela Geiger's testimony was biased.

<u>Commonwealth v. Jackson</u>, No. 710 EDA 2006, at 11 (Pa. Super. Sept. 17, 2007) (unpublished memorandum), attached as Ex. "B" to Respondents' Answer.

I conclude that the state court's resolution of this issue was not contrary to, or an objectively unreasonable application of the <u>Strickland</u> standard for ineffective assistance of counsel. In order to satisfy <u>Strickland's</u> prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 695. In the instant case, Jackson has failed to establish that he was prejudiced by the absence of a jury instruction specifically addressing how Ms. Geiger's outstanding criminal charges related to her credibility. In support thereof, I note that trial counsel zealously attacked Ms. Geiger's credibility during cross examination by pointing out that at the time of her testimony at Jackson's preliminary hearing, there had been an outstanding bench warrant for her arrest on prostitution charges and by questioning whether she was arrested on that bench warrant when she appeared in court. (N.T. 9/28/01, 26-29). In closing argument, trial counsel also argued that Ms. Geiger had made a deal with police for her testimony:

> [Ms. Geiger] came in on a bench warrant, and she gave a nice statement to police. She came in and was continued on the bench warrant. She came in and talked to the Judge. A lot of police were in the courtroom, but nobody touched her. She, at that point, has a motive. She has a motive for making up what she really didn't see, and eventually, you will see, on the tape that we have seen parts of before, that she is not there. She is not there to see

anything.  She is a cocaine addict, a crackhead, whatever you want to call it, and a prostitute.  That's what the bench warrant was for.

*****

What Angela Geiger told you she saw, she didn't see.  She couldn't have seen it, and it didn't happen that way, and she had that motive.  She wanted to keep working.  The police left her alone.  She had a second warrant the next year.  She kept working.  She was helpful to herself.

(N.T. 10/2/01, 128, 136).  Trial counsel clearly made the jury aware of the possibility that

Ms. Geiger may have agreed to testify in an effort to obtain favorable treatment for her

crimes.  In addition, in closing instructions, the state court instructed the jury on witness

credibility in general.  In doing so, the trial court charged the jury on its duty to weigh

credibility in light of a witness's possible bias or prejudice and to consider the possibility

that a witness may have a motive to deliberately give false evidence.[10]  This jury

instruction, in conjunction with trial counsel's cross-examination of Ms. Geiger and

_____

[10]In closing instructions, the trial court gave the following charge to the jury:

The matter of credibility of a witness; that is, whether his or her testimony [is] believable and accurate, in whole or in part, is solely for your determination.

I will mention some of the factors which might bear on that determination: Whether the witness has any interest in the outcome of the case, or has friendship or animosity toward other persons concerned in the case . . . and whether he or she shows any bias or prejudice which might color his or her testimony. . .

**********

You should consider whether the witnesses appear to be biased or unbiased, whether they are interested or disinterested persons, and you should consider all other factors which go to the reliability of their testimony.  The important thing is the quality of the testimony of each witness.

(N.T. 10/3/01, 24-25).

closing argument, adequately apprised the jury of the possibility that Ms. Geiger's testimony may have been influenced by her desire for leniency in her pending cases. See Commonwealth v. Harris, 852 A.2d 1168, 1177-1178 (Pa. 2004) (defendant not prejudiced by counsel's failure to request a jury charge on witness bias when counsel cross-examined witness on issue and court generally instructed the jury regarding principles of witness credibility).

In any event, it is firmly established that a court must consider the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied. Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999). In Strickland, the Supreme Court emphasized that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id. (citing Strickland, 466 U.S. at 695). This is necessary because Strickland's prejudice prong requires a court to determine whether there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id.; see Flamer v. Delaware, 68 F.3d 710, 728, 730 (3d Cir. 1995) (citing Lockhart v. Fretwell, 506 U.S. 364, 368-69 (1993); Strickland, 466 U.S. at 695). As the state court pointed out, "there was substantial evidence independent of Geiger's testimony that supported [Jackson's] conviction, including the testimony of Jeffery Ellison. Ellison testified that he saw [Jackson] shoot the victim in the chest from close range." Commonwealth v. Jackson, No. 710 EDA 2006, at 13 (Pa. Super. Sept. 17, 2007) (unpublished memorandum), attached as Ex. "B" to Respondents' Answer (citing N.T.

10/2/01, 30). Moreover, a day after the murder, Jackson was caught disposing of the murder weapon and subsequently made incriminating statements to the police. (N.T. 9/28/01, 162-164, 223-239). He also confessed to the crime in detail to a fellow inmate. (N.T. 9/28/01, 146-159). In light of the evidence against him, Jackson cannot show that the absence of a bias instruction deprived him of a "fair trial, a trial whose result is reliable." Id. (citing Strickland, 466 U.S. at 687). As such, Jackson has not demonstrated that he was prejudiced by trial counsel's failure to specifically request an instruction on witness bias and trial counsel cannot be deemed ineffective for failing to have done so. Accordingly, the state courts' determination of this issue was neither contrary to, nor an unreasonable application of, Strickland. See 28 U.S.C. § 2254(d).

## CONCLUSION

After close and objective review of the arguments and evidence, I conclude that Jackson's petition for writ of habeas corpus is meritless. Jackson's claims of trial court error are procedurally defaulted and the state courts' conclusion that counsel did not render ineffective assistance was not an objectively unreasonable application of United States Supreme Court precedent. As a result, Jackson's petition will be denied.

Similarly, because Jackson's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing nor is there a need to appoint counsel, as neither would change the outcome of this matter. See 28 U.S.C. § 2254(e)(2), 18 U.S.C. § 3006A; see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("an evidentiary

hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted); <u>see</u> <u>also</u> <u>Campbell v. Vaughn</u>, 209 F.3d 280, 221 (3d Cir. 2000).

An appropriate order follows.